IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOEL T. THOMPSON                                                           PLAINTIFF

V.                              CASE NO.: 5:10CV00247 BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff Joel Thompson brings this action for review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). For reasons that follow, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.[1]

**I.     Procedural History:**

Mr. Thompson filed his applications for DIB and SSI on October 27, 2005. He alleged disability since September 22, 2003, due to severe joint pain, irregular heartbeat, and depression.[2]  (Tr. 104)

---

[1] The Honorable David J. Manley, Administrative Law Judge.

[2] The ALJ declined to reopen the June 28, 2004 denial of Mr. Thompson's previous application for benefits. (Tr. 10) Accordingly, this claim concerns Mr. Thompson's alleged disability starting on June 29, 2004.

After the Commissioner denied his applications at the initial and reconsideration stages of administrative review, Mr. Thompson requested a hearing before an ALJ. The ALJ held a hearing on October 10, 2007, and Mr. Thompson appeared with his attorney. (Tr. 342-384)

At the time of the hearing, Mr. Thompson was a 44-year-old with a high school education. (Tr. 350) He was 5'11" tall and weighed approximately 195 pounds. (Tr. 104) Mr. Thompson had past relevant work as a production assembler. (Tr. 105-106, 380)

At the hearing, the ALJ received testimony from Mr. Thompson, his wife Valerie Thompson, and a vocational expert, Dr. Daniel Lustig. On March 26, 2008, the ALJ issued a decision denying Mr. Thompson benefits. (Tr. 10-17) The Appeals Council denied Mr. Thompson's request for review on June 21, 2010. (Tr. 3-6) He filed the current Complaint for Review of Decision (docket entry #2) on August 20, 2010.

## II. Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of

impairments) prevented the claimant from performing past relevant work[3]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g); 20 C.F.R. § 416.920(a)-(g).

The ALJ found that Mr. Thompson had not engaged in substantial gainful activity since the onset of his alleged disability. (Tr. 12, 16) Mr. Thompson's post heart ablation, hypertension, and cervical and lumbar spondylosis were found to be severe impairments. (Tr. 12, 16) According to the ALJ, Mr. Thompson did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14, 16)

The ALJ determined that Mr. Thompson could not perform his past relevant work as a production assembler (Tr. 15), but that he retained the residual functional capacity ("RFC") to perform a full range of light, unskilled work.[4] (Tr. 14-16) Based on the testimony of the vocational expert, the ALJ found that Mr. Thompson could perform a

---

[3] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv).

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when in involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b). Unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a); 20 C.F.R. § 416.968(a).

significant number of jobs existing in the national economy as a small products assembler, fast food worker, or cashier. (Tr. 15-16, 380-383)

III. **Analysis:**

    A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); 42 U.S.C. § 405(g). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

    B. *Plaintiff's Arguments*

Mr. Thompson claims the findings of the ALJ are not supported by substantial evidence because: (1) the ALJ erred in finding that Mr. Thompson's depression was not a severe impairment; (2) the ALJ erred in discrediting Mr. Thompson's allegations of pain; and (3) the ALJ erred in his RFC determination. (#9)

C. *Severe Impairments*

Mr. Thompson argues that the ALJ erred by finding his depression "not severe." A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992). "Basic work activities" include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; and the mental or nonexertional functions, such as capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; the use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in work routine. 20 C.F.R. § 404.1521(b)(1)-(6); 20 C.F.R. § 416.921(b)(1)-(6).

Mr. Thompson noted that the ALJ's RFC determination included limitations to superficial interpersonal contact; little supervision for routine, but detailed supervision for non-routine, tasks; and learning tasks through experience. (Tr. 381) Mr. Thompson argues that if his depression was not severe, then there would be no need for the ALJ to discuss these limitations.[5]  (#9, p. 4-5)

This argument is counterintuitive. If the ALJ included every depression-related limitation in his RFC determination, there would be no error in steps three through five of

---

[5] The ALJ specifically noted that these limitations were "to essentially unskilled work." (Tr. 381)

5

the sequential analysis. The only error would be in mere opinion-writing, *i.e.*, stating that the depression was not severe, while taking depression into account. This would not justify reversal. See *McGinnis v. Chater*, 74 F.3d 873, 875 (8th Cir. 1996) (arguable deficiency in opinion-writing insufficient reason for remand when the deficiency has no effect on the outcome of the case).

In reviewing the record, however, there is no medical evidence or testimony showing that depression significantly limited any of Mr. Thompson's basic work activities. At the hearing, Mr. Thompson expressed a lack of self-worth stemming from his inability to provide for his family. (Tr. 366-367) His limitations, however, resulted from his alleged pain. (Tr. 367)

Mr. Thompson received anti-depression medication from Jay R. Connelley, M.D., his general practitioner.[6] (Tr. 361) Mr. Thompson did not, however, require any treatment from a mental health professional. (Tr. 361)

A mental RFC assessment showed no more than moderate limitations in any basic mental work activity. (Tr. 197-199) A psychiatric review technique evidenced similar findings. (Tr. 183-196) A psychological evaluation found evidence of moderate depressive disorder, but again, evidenced little in the way of limitations in basic work

---

[6] When providing information in support of Mr. Thompson's disability claim, Dr. Connelley did not mention depression or any depression related limitation. (Tr. 339-341)

activities. (Tr. 174-176) The nonexertional limitations evidenced in the evaluation stemmed from Mr. Thompson's physical medical conditions or pain. (Tr. 176)

The ALJ discussed Mr. Thompson's alleged depression before finding it not severe. (Tr. 12-14) Substantial evidence in the record supports this finding. At step two, Mr. Thompson had the burden of establishing that his depression significantly limited his physical or mental ability to do basic work activities. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). He failed, however, to allege a single basic work activity that was significantly limited by his depression. (#9) Accordingly, the ALJ's finding that Mr. Thompson's depression was "not severe" was not error.

    D.    *Credibility Determination*

Mr. Thompson argues the ALJ erred in discrediting his allegations of pain. (#9, p. 5-7) When discrediting a plaintiff's subjective complaints, an ALJ must consider those complaints under the guidelines set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). *Polaski* factors include: (1) the plaintiff's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Id*. at 948.

The ALJ acknowledged Mr. Thompson's allegations of constant, disabling pain. (Tr. 12-13) He also noted Mr. Thompson's good work record, which the ALJ found enhanced Mr. Thompson's credibility. (Tr. 13) The ALJ also found, however, that Mr. Thompson's allegations of pain related limitations were not fully credible. (Tr. 13)

Regarding the *Polaski* factors, the ALJ noted that Mr. Thompson engaged in activities not typically performed by someone who is disabled. (Tr. 13) He could clean, do laundry, and complete some household repairs. He also mowed on a riding lawnmower for short periods of time. (Tr. 60, 80, 359) Mr. Thompson could walk, drive, and grocery shop. (Tr. 61, 81) He could also take care of his personal hygiene and do some cooking. (Tr. 59-60)

Mr. Thompson alleged fairly constant pain. The ALJ noted that Mr. Thompson underwent radio frequency denervation that reduced his neck pain by fifty percent. (Tr. 13, 128-139, 363) Mr. Thompson's mid-thoracic spine did "significantly well" after a previous radio frequency denervation. (Tr. 130)

Mr. Thompson alternated between oxycontin and a fentanyl patch for his pain. (Tr. 356-357) He alternated between medications so that there would be no need to increase the dosage. (Tr. 357) This implies that the medication regimen was effective.

As discussed below, Mr. Thompson's functional restrictions were consistent with the ALJ's RFC determination. See Section E. *infra*. The ALJ credited Mr. Thompson's subjective allegations of pain to the extent that Mr. Thompson was limited to light or sedentary work. In making this determination, the ALJ noted the sincerity of Valerie Thompson's testimony and considered the relevant *Polaski* factors (Tr. 13-14)

The ALJ is in the best position to gauge the credibility of testimony, and those credibility determinations are entitled to some deference. *Estes v. Barnhart*, 275 F.3d

722, 724 (8th Cir. 2002). After reviewing all the evidence, this Court concludes that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

      E.     *Residual Functional Capacity*

The ALJ bears the initial responsibility for assessing a claimant's RFC. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). It is the claimant's burden, however, to prove RFC. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

Mr. Thompson's RFC reflects what he can do despite his limitations. 20 C.F.R. § 404.1545; 20 C.F.R. § 416.945. In determining a claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that a claimant can perform in a work setting, after giving appropriate consideration to all impairments supported by the evidence. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ must determine RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

The ALJ found that Mr. Thompson retained the RFC to perform "an essentially full range of light exertional activity." (Tr. 16, 380-381) At the administrative hearing, however, the ALJ presented limitations that would prevent Mr. Thompson from

performing the full range of light work.[7] (Tr. 382) The additional limitations included the option to sit or stand with regular breaks, to push and pull only five pounds occasionally, and to walk occasionally or at will. (Tr. 382)

Mr. Thompson argues that this RFC determination failed to account for some of his limitations. (#9, p. 7-8) Mr Thompson did not, however, allege any limitations that were not incorporated in the ALJ's RFC determination. (#9, p. 8) (Tr. 14, 382)

Mr. Thompson underwent a consultative general physical examination on October 28, 2004. (Tr. 251-257) The examination revealed normal range of motion in the spine and extremities, normal straight-leg raising, and muscle spasms in the back. (Tr. 254) He had normal reflexes, no muscle atrophy or sensory abnormality, and normal gait. (Tr. 255) Mr. Thompson's limb functioning was normal. (Tr. 255) He had only moderate limitations in his ability to walk, stand, sit, and lift or carry for prolonged times. (Tr. 257)

Objective imaging showed relatively minor back injuries. Mr. Thompson had a disc protrusion at C5-C6, but was neurologically intact overall. (Tr. 128) A cervical spine MRI was read as "unremarkable" with a very small disc protrusion at C5-C6. (Tr. 133) The protrusion was not impinging the spinal cord or nerve roots and there were minimal facet changes. (Tr. 133) There was no nerve compression or sensory changes. (Tr. 138)

---

[7] The ALJ incorporated these limitations by reference in his decision. (Tr. 14)

On January 18, 2006, Dr. Asemota[8] completed another general physical examination of Mr. Thompson. (Tr. 223-229) Dr. Asemota found limited range of motion in Mr. Thompson's cervical and lumbar spine. (Tr. 226) Mr. Thompson had normal reflexes and no muscle weakness or atrophy. (Tr. 227) Mr. Thompson limped and had abnormal function when walking on heels and toes and rising from a squatting position. (Tr. 227) Overall, Dr. Asemota found that Mr. Thompson had moderate limitations in his ability to walk, stand, sit, lift, and carry. (Tr. 229)

On January 28, 2006, Kimberly Adametz, M.D., completed a physical RFC assessment for Mr. Thompson. (Tr. 207-214) In the assessment, Dr. Adametz noted the limitations and abnormalities found by Dr. Asemota's examination. (Tr. 214) Dr. Ademetz also noted that Mr. Thompson had moderate limitations. (Tr. 214) Considering Mr. Thompson's limitations, Dr. Adametz found that Mr. Thompson retained the RFC to perform a full range of light work. (Tr. 208-211, 214)

Dr. Connelley, Mr. Thompson's general practitioner, provided an assessment in support of Mr. Thompson's claims. (Tr. 339-341) Dr. Connelley noted that Mr. Thompson suffered from chronic back and neck pain. (Tr. 339) Based on this pain, Dr. Connelley found that Mr. Thompson was limited to lifting and carrying 15 pounds occasionally and 10 pounds frequently. (Tr. 340) Mr. Thompson could stand for two hours in an eight-hour work day, but had no limitation in sitting. (Tr. 340) According to

---

[8] The first name and correct spelling for Dr. Asemota is not clear from the record.

Dr. Connelley, Mr. Thompson could sit for an entire eight-hour work day without interruption. (Tr. 340) Dr. Connelley found that Mr. Thompson was limited, but not prohibited, in his ability to climb, balance, stoop, crouch, kneel, and crawl. (Tr. 341)

The various assessments and medical records support the ALJ's RFC determination. While Dr. Connelley limited Mr. Thompson to lifting 15 pounds, substantial evidence in the record supports the ALJ's finding that Mr. Thompson could lift up to 20 pounds. The ALJ's sitting or standing limitation accounted for Mr. Thompson's difficulties in prolonged walking. He could not perform work if he required breaks at his own convenience, as opposed to regular breaks. (Tr. 382) Dr. Connelley found, however, that Mr. Thompson could sit eight hours without interruption. (Tr. 340) Dr. Adametz found that, with normal breaks, Mr. Thompson could sit for six hours in an eight-hour day. (Tr. 208)

As Mr. Thompson noted, working as a cashier might result in a 75% decrease in pay from his previous job. (Tr. 384) This Court can consider, however, only whether a significant number of jobs existed which Mr. Thompson could perform. The Commissioner made this showing through vocational expert testimony. (Tr. 381-383)

IV.  **Conclusion:**

The Court has reviewed all of the evidence in the record, including all of the medical evidence, the assessment of the consulting physicians, and the hearing transcript. There is sufficient evidence in the record to support the Commissioner's determination

that Joel T. Thompson retained the residual functional capacity to perform a significant number of jobs existing in the national economy. Accordingly, Mr. Thompson's appeal is DENIED. The Clerk is directed to close the case.

IT IS SO ORDERED this 20th day of June, 2011.

_____
UNITED STATES MAGISTRATE JUDGE